# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 05-342 (RCL)** |
| | ) | |
| **ARCHBOLD-MANNER, et al.** | ) | |
| **Jesus Antonio Murillo-Lenis (2)** | ) | |
| **Ranfer Rios-Mercado (03)** | ) | |
| **Carlos Delgado-Gomez (10)** | ) | |
| **Enrique Oyola-Ropero (12)** | ) | |
| **Jose Hugo Alvarez-Lozano (15)** | ) | |
| **German Villegas-Mejia (17)** | ) | |
| **Gerardo Tobon-Rojas (18) and** | ) | |
| **Fernando Zapata-Bermudez (19)** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS INDICTMENT ON DUE PROCESS GROUNDS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Defendants, through undersigned counsel, hereby file this reply in support of their motion to dismiss the indictment based on due process grounds because it is apparent that these defendants cannot be assured a fair trial in this case. In support of this reply brief defendants state as follows:

## PROCEDURAL BACKGROUND:

1. Defendants re-allege and incorporate by reference the procedural history from the Motion To Dismiss Indictment on Due Process Grounds (Doc # 190), and the facts alleged in their Joint Motion To Dismiss Count One, or for a Bill of Particulars Doc # 192).

2. Some or all of the defendants sent letters or motions to the government making the usual informal discovery requests, while others filed formal motions for pretrial discovery. The government always represented that it would comply with its discovery obligations and provide the discovery in a timely manner when it was obtained by the United States government.

3. The Court has held multiple status hearings. At each hearing the defendants alerted the Court to continuing discovery problems. Each time the government assured the Court that it

was doing all that it could to work with the Columbian government, Jamaican government, and other authorities and law enforcement agencies to obtain custody of the discovery materials so they could be timely disclosed to the defendants in this case.  Prior to August 14th status hearing, the Court had set a number of soft discovery deadlines, as well as a number of firm discovery deadlines, including one of July 31st for the government to provide "certified" Spanish and English or Patoi and English transcripts of the pertinent wiretap calls because the Court *sua sponte* recognized that timely disclosure of the  transcripts was necessary if the case was to go to trial on October 1st .

4.   The government did not meet the July 31st deadline for providing the transcripts.  In fact, the government continued to provide little, if any, meaningful discovery in the two months between the June 12th status hearing and the August 14th scheduled hearing.   None of the conversations were translated, and few, if any, of the discovery documents were in English.  No physical evidence was ever made available in the case.  The primary discovery continued to be in the form of a brief Power Point presentation provided on a disk.  The Power Point presentation did include a schematic of sorts.  However the schematic was difficult to understand in the absence of meaningful discovery.

5.   As a result, prior to the August 14th status hearing, the defendants filed a series of discovery related motions, mostly based on the concerns that the defendants could not get a fair trial because of the continuing discovery problems, and because of the problems anticipated as likely to arise from the logistics of a trial in Washington, D.C., based on events that allegedly occurred outside of the United States.  Among the motions was the defendants' motion to dismiss on due process grounds (Doc # 190), and a separate joint motion to dismiss Count One or in the alternative for a bill of particulars (Doc # 192).

6.   The government filed an Omnibus Response to Defendants' Pretrial Motions.  In its response, the government opposed the motion to dismiss on due process grounds, representing that it "has provided all discovery in its possession, and will continue to do so, if any additional

3

discoverable evidence comes into its possession." (Doc # 216  at 31-32).   The government suggested that the delay was caused by the fact that "[t]he government must rely on international protocols to obtain evidence through Vienna Convention Requests (VCR) for evidence."  (Doc # 216  at 32).  [1]

7.  At the August 14th status hearing the Court entertained the defendants' motions and heard arguments from all the parties.  At the hearing the defense attorneys explained that in light of the meager discovery it had been difficult, if not impossible, to discuss the case with the defendants, investigate the case for trial, and have any meaningful plea discussions with the defendants.[2]   Again the government advised the Court that it understood the defendants' frustrations, but that the government had done all that it could to get the discovery.  After hearing from government counsel, the Court made a number of inquiries, including an inquiry as to why the government failed to comply with the July 31st deadline for the transcripts of the pertinent conversations.  The government responded something to the effect that it had merely been overlooked.  At the conclusion of the hearing, apparently recognizing the gravity of the problems and the difficulties created for the defendants and defense counsel  because of the discovery failures, the Court entered an Order granting a number of the defendants' requests, and setting firm deadlines for the remaining productions of discovery and evidence.  The Court did not rule on the Defendants' Motion to Dismiss, suggesting in the Order that the Court would rule on the motion to dismiss after assessing the government's compliance with the Court's directives.

---

[1]   It is noteworthy that at the August 14th hearing, in the context of the discussion regarding the pending suppression motions, the government conceded that there was evidence that the United States government and the Colombian government were working together regarding the investigation and prosecution of these defendants, at least sufficient to warrant a hearing on the "joint venture" issue in the event the Court finds that the defendants are otherwise entitled to a hearing on the merits of the motions.  The Court has not yet decided whether a hearing is required on those issues.

[2]   Counsel would note that it does not appear that plea offers were extended to most of these defendants in any event, even though it is generally the practice of the United States Attorney in this jurisdiction to make a plea offer for the defendants to consider before trial.

4

8.  Notwithstanding voluminous productions of documents and materials by the government in response to the Court's August 15, 2008 Order, most of the Order has not been satisfied in a way that facilitates the defendants' abilities to prepare for trial.   In fact, as set forth more fully in the Defendant's Response to the Government's Notice Regarding Availability of Evidence, which is being filed contemporaneously herewith, in many ways the government's efforts in this regard have made it more difficult for the defendants to understand the nature of the conspiracy and the charges facing them. [3]  Thus defendants file this Reply to the government's opposition to the motion to dismiss on due process grounds, since dismissal remains warranted.

**<u>DISCOVERY RELATED PROBLEMS:</u>**

9.  As noted in defendants' motion to dismiss on due process grounds (Doc # 190),  some of the defendants made their initial appearances in this Court more than 20 months ago.  The motion further explained that discovery in this case had nonetheless been almost non-existent, and that it had been largely limited to the disclosure of certain intercepted telephone conversations or summaries - conversations which were provided in Spanish and Patois, not in English, and not transcribed.  As the Court was repeatedly told at the August 14th status hearing, any additional discovery was very limited.  While defendants indicated that they did not have a basis at that time to question the government's representations that it was diligently seeking to obtain discovery, and that it was being provided to the defense as quickly as it is being provided

---

[3]  Defendants note that they are filing separately Defendants' Joint Response to Government's Notice Regarding Availability of Evidence, which more fully outlines the government's failures to comply with the Court's most recent order (See, 08/15/08 Order §A), and renews their requests for mandated discovery based on the government's failure to set forth specific responses to the defendants' requests by the August 22, 2008 deadline.  (See, 08/15/08 Court Order, §B. ¶6).  Defendants adopt and incorporate by reference herein the representations in their Joint Response.

5

to them by their counterparts in Colombia and Jamaica, defendants nevertheless argued that in light of the joint venture nature of these prosecutions, the government had to be held accountable for the inexcusable delays in any event.

10.    Since the filing of the motion, there is considerably more support for the proposition that the government should be held accountable for the delays, and that the tactics used in this case should not be countenanced.  It now seems evident that the Columbian and United States governments were simply not taking these prosecutions seriously.  The government, through its recent productions, has  demonstrated that a few phone calls, and some concerted effort, can and will produce cooperation and results between the United States and Colombia.  There is simply no excuse for either government to have delayed this effort for the past two years, particularly since these defendants were arrested and detained for all or most of that time.  We now know that the Colombian and United States  governments have the ability to work together quite well when it serves their interests, and to do so quickly - with or without "MLATs" or VCRs.

11.    We also know, from just a cursory review of the first 300 pages of documents produced, that at least some of the investigations, dating back to at least 2005, were conducted by the Colombian authorities at the request of one or more of the DEA agents involved in this case. United States law enforcement seems to have been working side-by-side with its Colombia counterparts throughout this investigation and the prosecution of these defendants.  There is simply no excuse for the "finger pointing" towards Colombia in an attempt to excuse the repeated discovery failures.  The government was able to obtain and provide approximately 10,000 pages of documents in two weeks.  Moreover, it turns out that the evidence related to the "Dan Viking" seizure has been within the possession, custody, and control of the United States government the entire time, yet it has still not been made available to the defendants. [4]   The

---

[4]  Last week the government offered for the first time to make the evidence available to the defendants on September 11th, but in Miami, Florida rather than the District of Columbia. None of the defense counsel were able to take advantage of that opportunity on short notice.  The government has therefore offered to make it available in Miami at an agreeable time in the future.

defendants are left to ponder the motives of one or both of the governments involved, since it is clear that the case was handled in a way which was certain to undermine the rights of these defendants to a fair and speedy trial.

12.  In addition to the inexcusable delays in providing Rule 16 discovery and in prosecuting this case, the sheer volume of the 11th hour discovery production is troubling.  First, most of it has again been provided in Spanish, with virtually no English translations.  Second, the government has not tailored the discovery to comply with the Court's Order to set forth specific responses to each of the defendants' requests , and therefore the process of making sense of the evidence has become exponentially more difficult.  Defendants now have approximately  three weeks to translate and digest approximately 10,000 documents and determine the significance of their contents - knowing that it may even contain exculpatory evidence, while also trying to spend time preparing voir dire, identifying *in-limine* issues for the Court, and otherwise preparing for a complex trial. [5]

**CONCLUSION:**

13.  Throughout the pendency of the case, the government repeatedly stated in its pleadings, including in the speedy trial exclusion motions, that it was seeking the discovery materials and evidence to provide to the defendants so they could review it in order to prepare and file appropriate motions and prepare to defend the case.  The defendants, long after being required to file their motions in this case, are for the first time being provided with the documentation relating to the wiretap authorizations, arrests, searches, and seizures in the case, as well as to the joint nature of the operation between the United States and Colombia.   All this discovery seems to seriously undermine the government's repeated assertions that it would

---

[5]  Presumably, the Court felt that in light of the government's delays, it was reasonable to require the government to try to simplify the defendants' efforts  to understand the nature of the discovery, and to understand which discovery pertains to which defendants and which counts. But the latest productions make the defendants' tasks far more complex, not simpler.

7

provide additional discovery , **if any**, came into its possession.  The government must have known when it indicted this case two years ago, or at least have learned during the pendency of the case, what evidence and discoverable documentation existed relating to this case.  As noted above, United States' officials and agents have been working side-by-side in Colombia throughout this investigation and these prosecutions.  The government had to know of both the existence and contents of the files related to this case.  It is ludicrous to think otherwise. Whether intentional or not, the government's representations in its numerous pleadings and responses to the Court regarding its efforts to obtain and provide discovery, if any, appear to have been misleading. [6]

14.    The defendants were greatly surprised by the government's latest production of discovery and evidence for a number of reasons.  First, the sheer volume of the discovery was completely unexpected based on all of the government's prior representations.  Second, the government did not take the time to properly comply with most, if not all, of the Court's directives in the August 15th Order, as described more fully in the Defendants' Response that accompanies this filing.  Third, by dumping huge volumes of new evidence on the defendants at this stage, the government must know that they have not facilitated the Court's apparent goal of providing the defendants with the means to expeditiously understand the charges and evidence against them.  Fourth, the Colombian and United States governments have had two years to get the discovery issues resolved in this case, yet they did nothing.  Nor have they offered any real excuse for the delay in producing the discovery.  It seems that prior to the Court's recent Order, the obligation to comply with discovery requirements in this case was simply not important enough to get the government's attention.

15.    The Constitution imposes certain constraints on the Federal Government, even

---

[6]    Defense counsel were genuinely surprised by the volume of this 11th hour production of discovery, and feel that they have been misled throughout the pendency of the case about the extent of discovery that the government was either aware of or had access to.

8

when it operates abroad.  See, United States  v. Verdugo-Urquidez, 494 US 259, 264( 1990).
More recently, the Supreme Court recognized that non-resident aliens are entitled to certain
Constitutional protections.  See,  Boumediene v. Bush, 128 S.Ct. 2229, 2259 (2008) ( Habeas
Corpus rights granted to Guantanamo prisoners).   Thus it appears reasonable that the defendants
in this case, who were arrested and detained for about a year and a half in Colombia before being
extradited to the United States, should be entitled to the same due process and speedy trial
protections as any other defendants arrested and charged with crimes in this  court.  In light of the
extent of the continuing problems related to discovery, including the failure to comply with the
Court's most recent Order, the defendants are being deprived of their Constitutional and statutory
rights to a fair and speedy trial.

        16.   The Court has broad discretion to fashion remedies for the failure to comply with
Rule 16(d)(2), and with its own Orders.  Since the discovery problems in this case continue to
impact the defendants' rights to a fair and speedy trial, defendants submit that dismissal of the
indictment is the appropriate remedy.

        Wherefore, the defendants submit that it is not only reasonable, but also appropriate, that
the government be held accountable for the inexcusable delays in providing discovery and in
prosecuting these cases, and that the case be dismissed in light of the government's failures to
comply with most, if not all, of the Court's August 15th Order.   For all these reasons, as well as
any additional reasons adduced at a hearing on the motion, defendants respectfully request that
the Court dismiss the indictment in this case.

                                        Respectfully submitted,


                                        _____/s/_____
                                        Howard B. Katzoff, # 348292
                                        717 D Street, N.W.
                                        Suite 310
                                        Washington, D.C.  20004
                                        (202) 783-6414
                                        Counsel for Gerardo Tobon Rojas (#18)

9

```
              /s/
```
Anthony Martin, Bar No. 362537
On behalf of Jesus Antonio Murillo-Lenis (#2)


```
              /s/
```
Diane S. Lepley, Bar No. 368927
On Behalf of Ranfer Rios-Mercado (#3)


```
              /s/
```
Gregory Smith, Bar No. 472802
On behalf of Carlos Delgoado Gomez (#10)


```
              /s/
```
Ron Earnest, Bar No. 477305
On behalf of Enrique Ayola Ropero (#12)


```
              /s/
```
Heather Shaner, Bar No. 273276
On behalf of Jose Alvarez-Lozano (#15)


```
              /s/
```
Cynthia Katkish, Bar No. 418876
On behalf of German Villegas-Mejia (#17)


```
              /s/
```
Mitchell Seltzer, Bar No. 261933
On behalf of Fernando Zapata-Bermudez(#19)



## CERTIFICATE OF SERVICE

I hereby certify that this ___11th___ day of ___September___, 2008, a copy of the foregoing Motion and Points and Authorities were electronically served upon all government counsel and all defense counsel of record.


```
              /s/
```
Howard B. Katzoff